Filed 6/24/24  City of Kerman v. Andres CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF KERMAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KAREN G. ANDRES,<br><br>Defendant and Respondent;<br><br>ERIC ANTUNA,<br><br>Real Party in Interest and Appellant. | F086661<br><br>(Fresno Super. Ct. No. 22CECG01322)<br><br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on June 21, 2024, be modified as follows:

1. On page 1, in the caption just below the Court of Appeal docket number, the trial court county shall be changed from Stanislaus Superior Court to Fresno Superior Court, so that it reads: "Fresno Super. Ct. No. 22CECG01322."

Except for the modification set forth, the opinion previously filed remains unchanged. This modification does not effect a change in the judgment.

POOCHIGIAN, Acting P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF KERMAN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KAREN G. ANDRES,<br><br>    Defendant and Respondent;<br><br>ERIC ANTUNA,<br><br>    Real Party in Interest and Appellant. | F086661<br><br>(Stanislaus Super. Ct. No. 22CECG01322)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Robert M. Whalen, Jr., Judge.

The Bennett Law Office, Ann M. Bennett, and Barry J. Bennett for Real Party in Interest and Appellant.

Liebert Cassidy Whitmore, Shelline K. Bennett, and Sue Ann Renfro for Plaintiff and Respondent.

No appearance by Defendant and Respondent.

-ooOoo-

Kerman Police Chief John Golden terminated appellant Officer Eric Antuna after concluding he had acted dishonestly and engaged in conduct unbecoming of his position when he had an extramarital affair with a coworker. A hearing officer appointed to review the termination reduced the penalty to a 60-day suspension. The City of Kerman (City) petitioned the superior court for a writ of administrative mandamus. The court granted the petition, effectively overruling the hearing officer and reinstating Antuna's termination. We conclude the hearing officer did not abuse her discretion and reverse the trial court's judgment.

## FACTS

K.T. began working for the City part time in 2016 and became a full-time employee in January 2020. When K.T. was 19, she and Antuna began to spend time together outside the Explorer program. Eventually, she asked Antuna if he wanted to have sex. Thereafter, Antuna and K.T. had a continuous sexual relationship from that time until she was 21 when she left the Explorer program. The relationship ended in April 2020, when Antuna's wife discovered it. Antuna's wife asked K.T. to come to her home. Antuna's wife pushed K.T. and threatened her.

K.T. later gave birth to a boy and took maternity leave from August 2020 to January 2021. Antuna's wife wanted a DNA test performed on the child.[1] However, K.T. said she did not want Antuna involved in the child's life. K.T. told Antuna to stay away from her and her son.

Antuna nonetheless tried to reach out to K.T. no more than three times. K.T. initially said she did not respond but later said she "would always text him back." K.T. told one Lieutenant Barcoma about the situation, and thereafter Antuna stopped sending her messages.

---

[1] K.T. later stated that she had a DNA test performed and that Antuna was not the father.

The City retained an independent investigator named Jeffrey Kermode. After his investigation, Kermode issued a report dated April 21, 2021.

Kermode concluded Antuna was "credible in part, having admitted to the sexual relationship with [K.T.], knowing that it was in violation of policy. However, Antuna was vague and said that he was unable to remember specifics about how the personal relationship began."

Kermode "sustained" the following allegations:

1. That Antuna engaged in repeated text messages, e-mails, and phone calls to K.T. in violation of City of Kerman Practices and Policies, Section 2.3.

2. That Antuna engaged in an inappropriate relationship, including a sexual relationship, with K.T., then a police explorer, in violation of the Boy Scouts of America "Safety First Learning for Life Guidelines" as adopted by the Kerman Police Explorers Rules and Regulations Manual, Sections 2.6.0, 2.8.2, and 2.8.3.

3. That Antuna engaged in criminal, dishonest, or disgraceful conduct, whether on- or off-duty that adversely affects the member's relationship with the Department in violation of the Kerman Police Department Police Manual, Section 318.5.9(h). Kermode concluded that the relationship "between an Explorer Advisor and an Explorer, especially if that relationship resulted in a child, would certainly bring disgrace upon the Department if it became public knowledge."

4. That Antuna engaged in on- or off-duty conduct which any member knows or reasonably should know is unbecoming of a member of the department, is contrary to good order, efficiency or morale, or tends to reflect unfavorably upon the department or its members in violation of the Kerman Police Department Police Manual, Section 318.5.9(m).

3.

Kermode concluded the allegation that Antuna engaged in unwelcome solicitation of a personal and/or sexual relationship while on duty or through the use of his official capacity was unfounded.

In a letter delivered to Antuna on June 3, 2021, Chief Golden notified him of the department's intent to terminate him. In a section entitled "Grounds for Proposed Disciplinary Action," the letter listed several policies and rules:

"**A. CITY OF KERMAN POLICE DEPARTMENT POLICY MANUAL**

"**Section 318.5.6: Relationships**

"*(a) Unwelcome solicitation of a personal or sexual relationship while on-duty or through the use of one's official capacity.*

"**Section 318.5.9: Conduct**

"*(h) Criminal, dishonest, disgraceful conduct, whether on- or off-duty, that adversely affects the member's relationship with this department.*

"*(m) Any other on- or off-duty conduct which any member knows or reasonably should know is unbecoming a member of this department, is contrary to good order, efficiency or morale, or tends to reflect unfavorably upon this department or its members.*

"**B. CITY OF KERMAN PERSONNEL RULES & REGULATIONS (EMPLOYEE HANDBOOK)**

"**Rule 2. Fair Employment Policies and Practices**

"Section 2.3: *This Policy prohibits harassment, discrimination, or retaliation against City applicants, officers, officials, employees, unpaid interns and volunteers, and contractors because of (a) an individual's protected classification; (b) the perception that an individual is within a protected classification; or (c) the individual's association with a person who is within or is perceived to be within a protected classification. Acts of harassment, discrimination, or retaliation are not within the course and scope of an individual's employment and the City may refuse to provide a defense and indemnity for such individual.*

4.

**"C. KERMAN POLICE EXPLORERS RULES AND REGULATIONS MANUAL**

### "Section 2.6.0: Youth Protection Guidelines

"*Post Advisors of Explorer Post 777 will practice Youth Protection Guidelines as directed by Learning for Life/Exploring, which includes:*

"• *There must be two-deep leadership on all trips outside regular meetings and on all activities which leave the Sequoia Chapter area; which means there should be at least two adults at these post events and activities.*

"• *There must be no one-on-one contact with Explorers. Other Explorers or Post Advisors must be present (exception is certified law enforcement ride-along). Respect the privacy of Explorers.*

"• *Provide separate accommodations for advisors and Explorers, and for males and females on overnight trips.*

"• *Ensure proper preparation for activities, especially those with safety risks. Secret organizations are not permitted.*

"• *Appropriate standards for attire should be upheld.*

"• *Proper training, supervision, and monitoring of officers and youth is necessary.*

### "Section 2.8.2: Sexual Harassment

"*No Explorer shall engage in any form of sexual harassment.*

"*Sexual harassment includes unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when such conduct is unwanted and has the purpose or effect of unreasonably interfering with an individual's performance in the post or creating an intimidating, hostile, or offensive environment.*

### "Section 2.8.3: Supervisor Responsibility

"*It is the responsibility of the Explorer Post Staff to see that all Explorers are permitted an environment free from discrimination. Not only is discrimination illegal, but it also creates a negative atmosphere that reduces productivity and morale. It undermines post integrity and destroys professionalism. Appropriate disciplinary action will be initiated against any Explorer or staff who violates these regulations.*

5.

"• *Post Explorer Staff are responsible for taking corrective action involving any discrimination or sexual harassment incident, when observed or whether the complaining party requests formal or informal action. Such incidents will be documented and reported to the Chief of Police for disposition.*

"• *Any member of the Explorer Staff who fails to take corrective action, can and will be disciplined by this department. The supervisor, as well as the department may be held civilly liable if corrective action is not taken.*"
(Fns. omitted)

The letter stated the proposed decision to terminate was not dependent on a determination that Antuna had violated *all* of the listed provisions, and instead that "any one of the violations or acts, alone, constitutes a sufficient basis."

An informal *Skelly*[2] conference was conducted on June 23, 2021. On July 7, 2021, Chief Golden informed Antuna of his formal termination via a "Final Notice of Termination."

According to the City's Personnel Rules and Regulations (Employee Handbook), employees can appeal significant discipline imposed through a Final Notice of Disciplinary Action. The appeal is to be heard by an independent hearing officer. The hearing officer is given the authority to determine the relevance, weight and credibility of evidence. The City bears the burden of proof (i.e., preponderance of the evidence). The hearing officer may decide to uphold, reduce or void the discipline. The hearing officer decision's is final unless challenged in court.

Antuna appealed Chief Golden's decision, and an independent hearing officer was appointed. After receiving testimony and exhibits, the hearing officer issued her decision. The hearing officer concluded Antuna "engaged in an inappropriate relationship, including a sexual relationship," in violation of the Kerman Police Explorer rules. Therefore, she concluded "a penalty is appropriate" but imposed a 60-day suspension rather than termination. She emphasized that Antuna did not initiate the relationship, that

---

[2] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

the communication between K.T. and Antuna was mutual, and that Antuna did not lie about the relationship when questioned about it. The hearing officer stated,

> "Reasonable minds can differ. I do not think that Chief Golden's findings or the decision to terminate Appellant's employment was an abuse of discretion. He rendered his decision based on the evidence available to him at the time. My perception of the facts and the severity of the transgression are somewhat different."

The City filed a petition for writ of mandate challenging the hearing officer's decision in Fresno County Superior Court. On June 12, 2023, the superior court granted Kerman's petition, and ordered the hearing officer to deny Antuna's appeal, effectively reinstating his termination. The court reasoned,

> "This court needs to go no further than the words of the opinion written by the Respondent [hearing officer]. She concluded there was no abuse of discretion on the part of the City, yet has chosen to modify the decision of the City for reasons separate and apart from the factual findings by both the City and by her. Frankly, to this court, it appears to be a difference of sensibilities between the City and the Hearing Officer which has caused the modification by the Hearing Officer. This court makes no findings based on whose sensibilities are more reflective of the community served by Mr. Antuna, but once the hearing officer found the allegations were true and there was no abuse of discretion on the part of the City, it is an abuse of discretion for the hearing officer to then impose her own values upon the measure of discipline instituted by the City. Instead, her focus should have been on the record before her and the findings which resulted therefrom."

Antuna appeals the trial court's order.

## DISCUSSION

When an employer challenges an administrative decision concerning employee discipline via mandamus (Code Civ. Proc., § 1094.5), the trial court reviews the administrative findings under the substantial evidence standard. (*Kolender v. San Diego Civil Service Com.* (2007) 149 Cal.App.4th 464, 470.) On appeal, this court similarly reviews the administrative findings (not the trial court's decision) under the substantial evidence test. (*Ibid*.)

7.

As to review of the penalty imposed, we apply the abuse of discretion standard. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 634; *Lowe v. Civil Service Com.* (1985) 164 Cal.App.3d 667, 677.) "If reasonable minds may differ with regard to the appropriate disciplinary action, there is no abuse of discretion." (*Lowe*, at p. 677.)

First, appellant contends the trial court should have reviewed the hearing officer's decision, not the police chief's decision, for abuse of discretion. However, it is clear the trial court did in fact review the hearing officer's decision. The trial court's ruling framed the question before it as "whether a *Hearing Officer* can modify a decision of the City even though he Hearing Officer has written she, '[does] not think that [the Police Chief's] findings or the decision to terminate [Mr. Antuna's] employment was an abuse of discretion.' " The trial court's decision goes on to discuss the details of the hearing officer's decision.

However, while we conclude the trial court did review the hearing officer's decision, we conclude it erred in how it conducted that review. The trial court concluded that "it appears to be a difference of sensibilities between the City and the Hearing Officer which has caused the modification by the Hearing Officer." The court concluded this was insufficient grounds for the hearing officer to modify the penalty, essentially concluding that such a modification could only occur if the police chief had abused his discretion. The City similarly argues that the police chief's decision should only be disturbed upon an abuse of discretion. But we see no basis for such a restriction on the hearing officer. The Employee Handbook provides that the hearing officer can uphold, reduce, or void the discipline imposed.[3] While the Employee Handbook requires the

---

[3] The parties dispute whether provisions of the Kerman Municipal Code, specifically section 1.28.080 apply here. We need not resolve that dispute because we do not think the differences between the Employee Handbook and the municipal code are decisive of the issue presented. Even the municipal code provides that "[t]he hearing officer shall sit as the trier of fact and shall rule on questions of law and admissibility of evidence. The hearing officer may affirm, reverse, modify, or set aside the … decision …

hearing officer to state the grounds upon which the decision is made, there is no substantive restriction as to the grounds on which a decision to reduce discipline must or must not be based.[4] In other words, there is nothing in the Employee Handbook that limits the hearing officer's power to reduce discipline to only those cases where the City has "abused its discretion." The process does not envision the hearing officer deferring to the police chief's decision.[5]

In contrast, once the hearing officer made her ruling, it was *that* decision that was entitled to deference from the trial court. When an employer challenges an administrative decision concerning employee discipline via mandamus (Code Civ. Proc., § 1094.5), the trial court reviews the administrative findings under the substantial evidence standard. (*Kolender v. San Diego Civil Service Com.*, *supra*, 149 Cal.App.4th at p. 470.) Judicial review of the penalty is conducted under the abuse of discretion standard. (*County of Los Angeles v. Civil Service Com.*, *supra*, 39 Cal.App.4th at p. 634; *Lowe v. Civil Service Com.*, *supra*, 164 Cal.App.3d at p. 677.) "If reasonable minds may differ with regard to the appropriate disciplinary action, there is no abuse of discretion." (*Lowe*, at p. 677.)

Here, in stark contrast from the department's initial decision to seek termination, the hearing officer decided that a 60-day suspension fit Antuna's misconduct. In all candor, we likely would have issued a stricter penalty in the first instance, which, as the hearing officer acknowledges, would have been within the realm of sound discretion. However, we cannot say the hearing officer's more lenient decision was an abuse of discretion. Antuna engaged in a sexual relationship with a colleague against pertinent rules and guidelines. Therefore, his conduct warranted a penalty, which the hearing

---

appealed from or may delete or impose conditions as the facts and law warrant." (Kerman Mun. Code, § 1.28.080(D.).)

[4] Except, of course, that the hearing officer must address only the issues submitted by the parties.

[5] For example, with respect to factual issues, the City bore the burden of proof before the hearing officer – the opposite of deference.

9.

officer acknowledged. She concluded that a 60-day suspension fit Antuna's actions. He did not initiate the relationship. And though the hearing officer found Antuna did not voluntarily report his relationship to his employer, he also did not lie about it when asked. Antuna did continue to communicate with K.T., but the communication was mutual. Given these factors, we cannot say the hearing officer's conclusion was outside the bounds of reason.

This is not to deny that termination would have also been a reasonable option. An affair is a significant moral failing and is unbecoming for an officer of the law who should be trustworthy in personal and public life.[6] The hearing officer would have been well within her discretion to uphold the termination. But that is not the choice she made. And the fact that "reasonable minds may differ with regard to the appropriate disciplinary action" does not establish an abuse of discretion. In other words, because a 60-day suspension and termination are both reasonable disciplinary actions, we find no abuse of discretion in the hearing officer selecting the former over the latter.

## DISPOSITION

The judgment is reversed. The trial court is directed to deny Kerman's petition for writ of administrative mandamus. Appellant shall recover costs on appeal.

POOCHIGIAN, Acting P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

---

[6] In this respect, we do part ways from the hearing officer's conclusion that an affair – particularly in these circumstances – is not "disgraceful."

10.